E-FILED
Monday, 10 December, 2007  04:31:26 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JANE DOE, Individually as Mother and Next Friend of JOHN DOE, a Minor, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| BRIMFIELD GRADE SCHOOL and BRIMFIELD SCHOOL DISTRICT #309, ABBY ABLE, Parent of ALLEN ABLE, a Minor; BETTY BAKER and BARRY BAKER, Parents of BRIAN BAKER, a Minor; CONNIE CHARLIE and CHESTER CHARLIE, Parents of CONNER CHARLIE, a Minor; DONALD DOG, Parent of DAVID DOG, a Minor; EDWARD EASY and ELLEN EASY, Parents of ELWARD EASY, a Minor, and FRANCINE FOX, Parent of FRANK FOX, a Minor, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 07 CV 1205 |
| Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

The Defendants', BRIMFIELD GRADE SCHOOL and BRIMFIELD SCHOOL DISTRICT #309, move to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.

**I**

**HISTORY OF TITLE IX PRIVATE CAUSE OF ACTIONS**

Title IX provides, in relevant part, that

"[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

Congress authorized a limited *administrative* enforcement scheme for Title IX. Federal departments or agencies are only authorized to enforce the objectives of §1681 under §1682.

*Davis v. Monroe County Bd. of Education*, 526 U.S. 629, 630 (1999). "Title IX does not by its terms create any private cause of action whatsoever, much less define the circumstances in which money damages are available. The only private cause of action under Title IX is judicially implied. *Cannon* v. *University of Chicago,* 441 U.S. 677 (1979)". *Davis*, 526 U.S. 629, 656 (Kennedy dissenting).

In 1979, the United States Supreme Court recognized that Title IX was enforceable by aggrieved individuals through an implied right of action. *Cannon* v. *University of Chicago*, 441 U.S. 677, 728 (1979). In 1992, the Supreme Court took a further important step when it recognized that sexual harassment was a type of sex discrimination under Title IX. *Franklin v. Gwinnett County Pub. Sch.*, 503 U.S. 60, 73-75 (1992). The *Franklin* Court made clear that in order to establish sexual harassment under Title IX, the conduct must constitute "discrimination" that is "based upon sex". The Court stated:

> "Title IX placed on the Gwinnett County Public Schools the duty not to discriminate on the basis of sex, and "when a supervisor sexually harasses a subordinate because of the subordinate's sex, that supervisor 'discriminate[s]' on the basis of sex." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 64, 106 S.Ct. 2399, 2404, 91 L.Ed.2d 49 (1986). We believe the same rule should apply when a teacher sexually harasses and abuses a student." *Franklin*, 503 U.S. at 75

In 1998, in *Gebser* v. *Lago Vista Independent School Dist.*, 524 U.S. 274 (1998), the Supreme Court next considered the question of teacher-on-student harassment and significantly limited the circumstances under which students could obtain money damages for the sexually harassing conduct by their teachers. Specifically, a cause of action must be maintained against an educational institution that received federal funding. Relying on the Spending Clause authority upon which Title IX was enacted, the Court held that Title IX was in the nature of a contract between the federal government and the school funding recipient. As a result, in order for a school district to be liable for the sexually harassing acts of its teachers, the Court found

that damages would only arise from the misconduct *of the school itself* in handling problems of sexual harassment or abuse by teachers. *Gebser*, 524 U.S. at 284-286.  To establish such actionable misconduct against the school, the Court required a sexually harassed (i.e. unwelcomed conduct on the basis of sex) student to prove three additional elements: (1) that there was an "appropriate person" with the ability to take corrective action; (2) who had actual knowledge of the harassment; and (3) who responded with deliberate indifference to that knowledge. *Gebser*, 524 U.S. at 277.

One year later in 1999, the Supreme Court considered the appropriate legal test for instances of student-on-student (or peer) sexual harassment at school.  In *Davis v. Monroe County Bd. of Education*, 526 U.S. 629, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999), the Supreme Court found that "student harassment of another student may constitute discrimination under Title IX when the funding recipient engages in harassment directly or when the funding recipient's deliberate indifference subjects its students to harassment"  Expanding on *Gebser*, not only did the Supreme Court apply the elements discussed in *Franklin* and *Gebser*, but further required that (1) the school exercise substantial control over both the harasser and the context in which the known harassment occurs; and (2) the sexual harassment in question be so severe, pervasive, and objectively offensive that it deprives victims of access to the educational opportunities or benefits provided by the school. *Davis*, 526 U.S. at 651.  The last element was established to assure that "[d]amages are not available for simple acts of teasing and name-calling among school children, even where these comments target differences in gender". *Davis*, 526 U.S. at 652.  Thus, a higher bar was set for holding a school liable for money damages for peer-on-peer student sexual harassment under Title IX than other forms of sexual harassment.

This case involves allegations of student-on-student conduct by members of the same sex. In *Oncale v. Sundowner Offshore Services, Inc,* 523 U.S. 75 (1998), a Title VII case, the Supreme Court decided that a Title VII claim may apply when the harasser and the harassed employee are of the same sex. The argument was presented that adopting same-sex liability "will transform Title VII into a general civility code for the American workplace." The Supreme Court addressed this issue by focusing on two requirements. First, the Plaintiff must prove that the conduct must constitute "discrimination based on sex", stating:

> "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at "*discriminat[ion]* . . . because of . . . sex." We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Harris, supra*, at 25 (Ginsburg, J., concurring). *Oncale,* 523 U.S. at 80.

Second, the conduct must be severe or pervasive enough to create an objectively hostile or abusive work environment so that simply male-on-male horseplay or roughhousing does not become actionable. On that point the opinion states:

> "And there is another requirement that prevents Title VII from expanding into a general civility code: As we emphasized in *Meritor* and *Harris*, the statute does not reach genuine but innocuous differences in the ways men and women routinely interact with members of the same sex and of the opposite sex. The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment–an environment that a reasonable person would find hostile or abusive–is beyond Title VII's purview." *Harris*, 510 U.S., at 21, citing *Meritor*, 477 U.S. at 67. ***We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace–such as male-on-male horseplay or intersexual flirtation–for discriminatory "conditions of employment.***
> "We have emphasized, moreover, that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering "all the circumstances." *Harris, supra,* at 23. In same-sex

(as in all) harassment cases, that inquiry requires careful consideration of the social context in which particular behavior occurs and is experienced by its target. A professional football player's working environment is not severely or pervasively abusive, for example, if the coach smacks him on the buttocks as he heads onto the field—even if the same behavior would reasonably be experienced as abusive by the coach's secretary (male or female) back at the office. The real social impact of workplace behavior often depends on a constellation of surrounding circumstances, expectations, and relationships which are not fully captured by a simple recitation of the words used or the physical acts performed. ***Common sense, and an appropriate sensitivity to social context, will enable courts and juries to distinguish between simple teasing or roughhousing among members of the same sex, and conduct which a reasonable person in the plaintiff's position would find severely hostile or abusive.***" (emphasis added) *Oncale,* 523 U.S. at 81-82.

The same concerns that were raised in *Oncale* about mistaking acts of "simple teasing or roughhousing" and "ordinary socializing in the workplace, such as male-on-male horseplay" for discriminatory conditions of employment were also raised in *Davis* in the context of student-on-student harassment. These concerns were articulated by Justice Kennedy in a dissent in which the Chief Justice Rehnquist, Justice Scalia and Justice Thomas joined. Justice Kennedy began by expressing grave misgivings about stigmatizing children as "sexual harassers";

> "The law recognizes that children-particularly young children-are not fully accountable for their actions because they lack the capacity to exercise mature judgment. (citation omitted). It should surprise no one, then, that the schools that are the primary locus of most children's social development are rife with inappropriate behavior by children who are just learning to interact with their peers. The *amici* on the front lines of our schools describe the situation best:
>
>> "Unlike adults in the workplace, juveniles have limited life experiences or familial influences upon which to establish an understanding of appropriate behavior. The real world of school discipline is a rough-and-tumble place where students practice newly learned vulgarities, erupt with anger, tease and embarrass each other, share offensive notes, flirt, push and shove in the halls, grab and offend." Brief for National School Boards Association et al. as *Amici Curiae* 10-11 (hereinafter school *amici*).
>
> No one contests that much of this "dizzying array of immature or uncontrollable behaviors by students," *ibid.*, is inappropriate, even "objectively offensive" at times, *ante* at 19, and that parents and schools have a moral and ethical responsibility to help students learn to interact with their peers in an appropriate

manner. It is doubtless the case, moreover, that much of this inappropriate behavior is directed toward members of the opposite sex, as children in the throes of adolescence struggle to express their emerging sexual identities.

It is a far different question, however, whether it is either proper or useful to label this immature, childish behavior gender discrimination. Nothing in Title IX suggests that Congress even contemplated this question, much less answered it in the affirmative in unambiguous terms." *Davis*, 526 U.S. at 672-74 (Kennedy dissenting).

Justice Kennedy next addressed the difficulty of distinguishing between kids engaged in true sexual discrimination and common horseplay.

"Contrary to the majority's assertion, however, respondents have made a cogent and persuasive argument that the type of student conduct alleged by petitioner should not be considered "sexual harassment," much less gender discrimination actionable under Title IX:

"[A]t the time Petitioner filed her complaint, no court, including this Court had recognized the concept of sexual harassment in any context other than the employment context. Nor had any Court extended the concept of sexual harassment to the misconduct of emotionally and socially immature children. The type of conduct alleged by Petitioner in her complaint is not new. However, in past years it was properly identified as misconduct which was addressed within the context of student discipline. The Petitioner now asks this Court to create out of whole cloth a cause of action by labeling childish misconduct as 'sexual harassment,' to stigmatize children as sexual harassers, and have the federal court system take on the additional burden of second guessing the disciplinary actions taken by school administrators in addressing misconduct, something this Court has consistently refused to do." Brief for Respondents 12—13 (citation omitted).

\*\*\*

To treat that proposition as establishing that the student conduct at issue here is gender discrimination is to erase, in one stroke, all differences between children and adults, peers and teachers, schools and workplaces.

In reality, there is no established body of federal or state law on which courts may draw in defining the student conduct that qualifies as Title IX gender discrimination. Analogies to Title VII hostile environment harassment are inapposite, because schools are not workplaces and children are not adults. The norms of the adult workplace that have defined hostile environment sexual harassment, see, *e.g.*, *Oncale* v. *Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), are not easily translated to peer relationships in schools, where teenage romantic relationships and dating are a part of everyday life. Analogies to Title IX teacher sexual harassment of

students are similarly flawed. A teacher's sexual overtures toward a student are always inappropriate; a teenager's romantic overtures to a classmate (even when persistent and unwelcome) are an inescapable part of adolescence." *Davis*, 526 U.S. at 674-675. (Kennedy dissenting).

Justice Kennedy went on to point out that the majority recognized that it was no one's intention to label horseplay, even if gender-oriented, actionable sexual harassment;

> The majority admits that, under its approach, "[w]hether gender-oriented conduct rises to the level of actionable 'harassment' ... 'depends on a constellation of surrounding circumstances, expectations, and relationships, including, but not limited to, the ages of the harasser and the victim and the number of individuals involved." *Ante*, at 20 (citations omitted). The majority does not explain how a school is supposed to discern from this mishmash of factors what is actionable discrimination. Its multifactored balancing test is a far cry from the clarity we demand of Spending Clause legislation. *Davis*, 526 U.S. at 675 (Kennedy dissenting)

Justice Kennedy explained that the majority's attempt to limit the scope of a student-on-student cause of action under Title IX may not be adequately addressed by the test that it was adopting because of the immaturity of the actors involved who commonly engage in name calling, teasing, roughhousing and horseplay;

> The only guidance the majority gives schools in distinguishing between the "simple acts of teasing and name-calling among school children," said not to be a basis for suit even when they "target differences in gender," *ante* at 21, and actionable peer sexual harassment is, in reality, no guidance at all. The majority proclaims that "in the context of student-on-student harassment, damages are available only in the situation where the behavior is so serious, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." *Ante*, at 21. The majority does not even purport to explain, however, what constitutes an actionable denial of "equal access to education." Is equal access denied when a girl who tires of being chased by the boys at recess refuses to go outside? When she cannot concentrate during class because she is worried about the recess activities? When she pretends to be sick one day so she can stay home from school? It appears the majority is content to let juries decide. *Davis*, 526 U.S. at 676 (Kennedy dissenting).

The *Davis* majority's effort to alleviate the concerns raised by Justice Kennedy in his dissent resulted in adopting substantially the same test that was adopted in *Oncale*. *Davis* requires that a plaintiff must prove that the conduct must be so severe, pervasive, and objectively

offensive that it denies its victims the equal access to education that Title IX is designed to protect. In this regard, the *Davis* majority instructs that courts must bear in mind that schools are unlike adult workplaces and that children regularly interact in a manner that would be unacceptable among adults:

> It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. ***Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender.*** Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect. (emphasis added) *Davis*, 526 U.S at 651-52.

## II

## ARGUMENT
### A.

### THE ALLEGED HARASSMENT OF PLAINTIFF WAS NOT DISCRIMINATION BASED ON SEX.

*Franklin* requires that the Plaintiffs' Title IX sexual harassment claim must be "discrimination" that is "on the basis of sex." 20 U.S.C. § 1681(a); See also, *Seamons v. Snow*, 84 F.3d 1226, 1232 (10th Cir. 1996); *Burwell v. Pekin Community High School District*, 213 F.Supp.2d 917, 930 (C.D. Ill. 2002); *Manfredi v. Mount Vernon Bd. of Educ.,* 94 F.Supp.2d 447, 453-56 (S.D.N.Y.2000) and *Frazier v. Fairhaven School Committee*, 276 F.3d 52 (1st Cir. 2002).

Plaintiff's complaints miss the target of Title IX. Plaintiff was never discriminated against on the basis of sex. Rather, Plaintiff's complaints involve what is described by him as "sac stabbing" [Complaint p. 60] by numerous co-students [Complaint par. 10 of Count I], all of the same sex [Complaint par. 67]. The Complaint further alleges that not only was he a victim of "sac-stabbing" but that it was happening to others [Complaint par. 60] throughout the entire

...
...
...

seventh grade boys basketball squad. [Complaint par. 43 – 46]. These allegations establish that the "sac-stabbing" was not being engaged in for sexual self-stimulation or involved homosexual or effeminate behavior but rather was simply roughhousing or horseplay.

In *Seamons*, the Tenth Circuit held that a male high school student had not stated a claim under Title IX because he failed to allege facts to show harassment based on his sex. The student claimed that he was assaulted by football teammates, taped to a towel bar with his genitals exposed, and a girlfriend brought in to view him. He asserted that after reporting the incident, the coach accused him of betraying the team and dismissed him from the team when he refused to apologize. He left school at the principal's suggestion. The court found that a critical element of Title IX was not satisfied because there was no showing that the harassment was based on sex.

In *Frazier v. Fairhaven School Committee*, 276 F.3d 52 (1st Cir. 2002), the First Circuit dismissed plaintiff's Title IX sexual harassment Complaint because it failed to allege facts sufficient to show that the conduct was discrimination "based on sex". The court ruled, at page 66;

> "Discrimination on the basis of sex is the *sine qua non* of a Title IX sexual harassment case, and a failure to plead that element is fatal. *Cf.* (*Higgins v. New Balance Athletic Shoe, Inc.,* 194 F.3d 252, 258 (1st Cir.1999) explaining that "in same-sex harassment cases as in all sexual harassment cases, the plaintiff 'must always prove that the conduct at issue was not merely tinged with offensive sexual connotations,' but in fact constituted discrimination 'because ... of sex' ". (*Oncale*, 523 U.S. at 81). There is nothing in the amended complaint to suggest that Morency's behavior constituted discrimination on the basis of sex."

Here, the Plaintiffs' Complaint fails to allege any conduct that suggest that the student-on-student behavior involving "sac stabbing" constitutes discriminatory conduct on the basis of sex.

**B.**

**THE ALLEGED HARASSMENT OF PLAINTIFF
WAS NOT SEVERE AND PERVASIVE**

As previously discussed, one avenue that the Supreme Court undertook in *Davis*[1] to assure that horseplay, roughhousing and teasing did rise to a level to stigmatize students who engage in such conduct as "sexual harassers" was to require the Plaintiff to establish that the alleged misconduct was "so severe, pervasive, and objectively[2] offensive that it denies its victims the equal access to education that Title IX is designed to protect". The allegation of Plaintiffs' Complaint fails to rise to this level. Plaintiffs' Complaint alleges conduct that cannot be characterized as anything other than roughhousing. It is alleged that kids on the Brimfield Grade School Seventh Grade basketball team engage in hitting each other's crotches. If the test established in *Davis* to weed out roughhousing and horseplay as actionable sexual discrimination is to have any meaning, this conduct simply cannot be objectively characterized as "so severe, pervasive, and objectively offensive that it denies its victims the equal access to education". It clearly is not. It may have been unwelcome and even offensive to the Plaintiff but it was not conduct that objectively deprived him of his educational opportunity. Nor is it alleged to have any prurient, demeaning or discrimination implications. For these reasons, Plaintiffs' Complaint against the Defendants', BRIMFIELD GRADE SCHOOL and BRIMFIELD SCHOOL DISTRICT #309 must be dismissed.

---

[1] A similar test was also adopted under Title VII sexual harassment claims in *Meritor* and *Harris* which was pointed out in *Oncale*. Thereunder, the behavior must be so *objectively* offensive to alter the "conditions" of the victims employment.

[2] Plaintiffs allege under Paragraph 85 that John Doe was removed from the school by his parents. This was a subjective choice by his parents after Plaintiffs' attorney threatened litigation (See Paragraph 83). The *Davis* test is objective in nature.

## C.

## NO COURT HAS RECONIZED A "SAME SEX" TITLE IX CLAIM FOR THE TYPRE OF CONDUCT ALLEGED HEREIN

The United States Supreme Court has never recognized that a private claim for damages under Title IX is viable for "same sex" conduct. There is some reason to believe that the teachings of *Oncale* will be incorporated into the Title IX educational setting. As previously discussed, *Oncale* is a Title VII case. *In Oncale,* the Supreme Court found "that nothing in Title VII necessarily bars a claim of discrimination 'because of ... sex' merely because the plaintiff and the defendant are of the same-sex." *Id* at 79.

The lower federal courts have generally concluded that same-sex claims are viable under Title IX as they are under Title VII. *Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 220 (5th Cir. 1998); *Ray v. Antioch Unified Sch. Dist.*, 107 F. Supp. 2d 1165, 1169 (N.D. Cal. 2000); *Montgomery,* 109 F. Supp. 2d at 1092; *H.M. and M.M. v. Jefferson County Bd. of Educ.*, 719 So. 2d 793, 795 (Ala. 1998). But, all of the lower court Title IX same-sex harassment cases involve some type of abuse or assaults of a sexual nature. None involve the type of conduct that is alleged in the Plaintiffs' Complaint. There does not appear to be any "same-sex" Title IX claims that have survived which involve what has traditionally been recognized as roughhousing or horseplay. Justice Kennedy's dissent in *Davis* may address why:

> "Analogies to Title VII hostile environment harassment are inapposite, because schools are not workplaces and children are not adults. The norms of the adult workplace that have defined hostile environment sexual harassment, see, *e.g.*, *Oncale* v. *Sundowner Offshore Services, Inc.*, 523 U.S. 75 (1998), are not easily translated to peer relationships in schools, where teenage romantic relationships and dating are a part of everyday life. Analogies to Title IX teacher sexual harassment of students are similarly flawed. A teacher's sexual overtures toward a student are always inappropriate; a teenager's romantic overtures to a classmate (even when persistent and unwelcome) are an inescapable part of adolescence."

The *Oncale* decision offered three methods to prove actionable "same sex" harassment. First, a plaintiff can establish that the offensive conduct was motivated by sexual desire, which is most often accomplished by presenting "credible evidence that the harasser [is] homosexual." *Dick v. Phone Directories Co., Inc.,* 397 F.3d 1256, 1263 (10th Cir. 2005), citing *Oncale*, 523 U.S. at 80. Second, a plaintiff can establish the harassment was effected through "such sex-specific and derogatory terms as to make it clear that the harasser is motivated by general hostility to the presence of [men] in the workplace. *Id.* at 1264 citing *Oncale* at 80-81. Finally, a plaintiff can prove that the harasser treats males and females differently in the workplace. *Id.* However, to comply with the requirement of Title VII, and thus Title IX by implication, the discrimination, i.e. differences in treatment, must be motivated by the plaintiff's gender, not individual grudges, horseplay or other non-gender related circumstances. (See generally *Dick v. Phone Directors Company, Inc.,* 397 F.3d 1256, 1265-66 (recognizing that harassment of a sexual nature which was motivated by an intent to humiliate plaintiff because of personal dislike would not satisfy *Oncale*)).

The allegations of the Complaint do not fall under any of three methods that have been recognized under *Oncale* for establishing same-sex sexual harassment. Indeed, the interactions between plaintiff and his fellow seventh grade basketball team members that he identifies as his harassers is not in any way related to plaintiff's sexuality. For this reason, Plaintiff's same-sex harassment claims must be dismissed.

### III

### THE ALLEGATION RELATING TO THE
### DUTIES OF FEDERAL RECIPIANTS SHOULD BE STRICKEN

Paragraphs 16 – 17, 20 -21, 23 and 86 – 88 of Plaintiffs' Complaint set forth allegations based upon alleged violations for the failure to follow the U.S Department of Education

Regulations. As stated earlier, "Title IX does not by its terms create any private cause of action whatsoever, much less define the circumstances in which money damages are available. The only private cause of action under Title IX is judicially implied. *Cannon* v. *University of Chicago,* 441 U.S. 677 (1979)". *Davis*, 526 U.S. 629, 656 (Kennedy dissenting).

This issue as to whether the judicially created private cause of action under Title IX could be based upon a failure to follow Federal regulations was addressed by the Supreme Court in *Gebser* v. *Lago Vista Independent School Dist.*, 524 U.S. 274 (1998). Therein, the Court stated:

> "Petitioners focus primarily on Lago Vista's asserted failure to promulgate and publicize an effective policy and grievance procedure for sexual harassment claims. They point to Department of Education regulations requiring each funding recipient to "adopt and publish grievance procedures providing for prompt and equitable resolution" of discrimination complaints, 34 C.F.R. § 106.8(b) (1997), and to notify students and others that "it does not discriminate on the basis of sex in the educational programs or activities which it operates," § 106.9(a). ***Lago Vista's alleged failure to comply with the regulations, however, does not establish the requisite actual notice and deliberate indifference. And in any event, the failure to promulgate a grievance procedure does not itself constitute "discrimination" under Title IX.*** Of course, the Department of Education could enforce the requirement administratively: Agencies generally have authority to promulgate and enforce requirements that effectuate the statute's nondiscrimination mandate, 20 U.S.C. § 1682, even if those requirements do not purport to represent a definition of discrimination under the statute. *E.g., Grove City,* 465 U.S., at 574-575, 104 S.Ct., at 1221-1222 (permitting administrative enforcement of regulation requiring college to execute an "Assurance of Compliance" with Title IX). ***We have never held, however, that the implied private right of action under Title IX allows recovery in damages for violation of those sorts of administrative requirements***." (emphasis added) *Gebser*, 524 U.S. at 291-292.

At least two other courts have also considered this issue and both agree that the judicially created cause of action under Title IX does not include a defendant's failure to follow federal regulations. *Seamons v. Snow,* 84 F.3d 1226, 1233 (10th Cir. 1996): and *Bougher v. University of Pittsburg*, 713 F.Supp. 139, 143-44 (W.D.Pa 1989) aff'd. 882 F.2d 74 (3rd cir. 1989). The

Defendants therefore request that all references to Federal regulations and their requirements be stricken from Plaintiffs' Complaint and be declared irrelevant.

                                        Respectfully submitted,
                                        BRIMFIELD GRADE SCHOOL and
                                        BRIMFIELD SCHOOL DISTRICT #309,
                                              Defendants,

                                        CASSIDY & MUELLER,
                                            Attorneys for Defendants.
                                      By:    s/ John E. Cassidy, III
                                            John E. Cassidy, III
                                            Cassidy & Mueller
                                            416 Main Street
                                            Suite 323
                                            Peoria, IL  61602
                                            Telephone:  (309) 676-0591
                                            Facsimile:  (309) 676-8036
                                            E-Mail:  jcassidy@cassidymueller.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on December 10, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Katrina Taraska<br>Michael Waters<br>Vonachen, Lawless, Trager & Slevin<br>456 Fulton, Suite 425<br>Peoria, IL 61602 | Gerald Brady, Jr.<br>Brady & Donahue<br>1133 N. North Street<br>Peoria, IL 61602 |
| John Fleming<br>Fleming & Umland<br>411 Hamilton Blvd., Suite 1518<br>Peoria, IL 61602 | David Perkins<br>Heyl, Royster, Voelker & Allen<br>124 SW Adams<br>Suite 600<br>Peoria, IL 61602 |
| Richard Steagall<br>Nicoara & Steagall<br>416 Main Street, Suite 815<br>Peoria, IL 61602 | Julie Galassi<br>Hasselberg, Rock, Bell & Kuppler<br>4600 N. Brandywine Drive, Suite 200<br>Peoria, IL 61614 |

      s/    John E. CASSIDY, III
      CASSIDY & MUELLER
      416 Main Street, Suite 323
      Peoria, IL 61602
      Telephone: 309/676-0591
      Fax: 309/676-8036
      E-mail: jcassidy@cassidymueller.com