**E-FILED**
Thursday, 17 January, 2008  04:14:38 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JANE DOE, Individually and as Mother and Next Friend of JOHN DOE, a Minor, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Case Number:  07-CV-1205 ) |
| BRIMFIELD GRADE SCHOOL and BRIMFIELD SCHOOL DISTRICT #309; ABBY ABLE, Parent of ALLEN ABLE, a Minor; BETTY BAKER and BARRY BAKER, Parents of BRIAN BAKER, a Minor; CONNIE CHARLIE and CHESTER CHARLIE, Parents of CONNER CHARLIE, a Minor; DONALD DOG, Parent of DAVID DOG, a Minor; EDWARD EASY and ELLEN EASY, Parents of ELWARD EASY, a Minor; and FRANCINE FOX, Parent of FRANK FOX, a Minor, | ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS

NOW COMES the Plaintiff, by and through her respective attorneys, VONACHEN, LAWLESS TRAGER & SLEVIN, and in support of her Response to the Defendants, BRIMFIELD GRADE SCHOOL and BRIMFIELD SCHOOL DISTRICT'S Motion to Dismiss, states as follows:

The Defendants, BRIMFIELD GRADE SCHOOL and BRIMFIELD SCHOOL DISTRICT, bring a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).   It would be in error to dismiss Plaintiff's claim against the Defendants, BRIMFIELD GRADE SCHOOL and BRIMFIELD SCHOOL DISTRICT, brought by Plaintiff under Title IX at this stage in the proceedings.  Plaintiff has properly alleged facts sufficient to state a claim under

Title IX against the school district for sexual discrimination in the form of student-on-student sexual harassment.

**Federal Rule 8(a)**

Federal Rule 8(a) requires that Plaintiff need only set forth a short and plain statement of claims for relief in her complaint filed in federal court. It is enough to name the parties, plaintiff and the defendant, state the nature of the claim for which relief is sought and a few additional details (such as the date, the events, etc….) as to allow a party defendant to investigate. *Kolupa v. Roselle Park District*, 438 F.3d 713 (7th Cir. 2006). This case is instructive and authoritative for the purpose of establishing the pleading requirements for a case based upon employment discrimination under Title VII.

The Seventh Circuit of Appeals in *Kolupa***,** held:

"Federal complaints plead *claims* rather than facts. The appendix to the Rules of Civil Procedure contains models that illustrate the short and simple allegations that Fed. R. Civ. P. 8(a) calls for. It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate. A full narrative is unnecessary. See, e.g., *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 152 L. Ed. 2d 1 (2002); *McDonald v. Household International, Inc.*, 425 F.3d 424, 427-28 (7th Cir. 2005); *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077-78 (7th Cir. 1992). Details come later, usually after discovery--though occasionally sooner if, as the rules allow, either side seeks summary judgment in advance of discovery, or the district court orders the plaintiff to supply a more definite statement. See Fed. R. Civ. P. 12(e) *Id* at 714.

The district judge in the underlying claim *Kolupa*, required the plaintiff to set forth corresponding facts to each element of plaintiff's "prima facie case" under Title VII.  The Seventh Circuit, by contrast, overruled the district court's decision and held:

"Any district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain. . .' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). The question presented in *Swierkiewicz* was whether the complaint in a Title VII case must include factual allegations corresponding to each aspect of a prima facie case; the Court held that it need not, writing that **"the prima facie case under *McDonnell Douglas* . . . is an evidentiary standard, not a pleading requirement."** 534 U.S. at 510. Yet the district court dismissed *Kolupa's* complaint on the same ground that *Swierkiewicz* had disapproved. The Court held, and we reiterate, that complaints need not plead facts and need not narrate events that correspond to each aspect of the applicable legal rule. Any decision declaring "this complaint is deficient because it does not allege X" is a candidate for summary reversal, unless X is on the list in Fed. R. Civ. P. 9(b)." *Id* at 714-715.

The Court's criticism of plaintiff's complaint was not that it set forth too little, but stylistically, that the plaintiff's complaint plead more than was necessary.  Thus, the Court went on to state that while improper, the District Court Judge then likely relied upon the plaintiff's omission of other relevant facts as a concession upon which dismissal was granted.  However, the Court in *Kolupa*, made clear that a decision on this basis would be improper stating, "silence is not a concession.  Silence is just silence and does not justify dismissal unless Rule 9(b) requires details. Arguments that rest on negative implications from silence are poorly disguised demands for fact pleading."  *Id* at 715

**<u>Defendant's Motion to Dismiss Does Not Meet the Standard Required Under Federal Rule of Civil Procedure 12(b)(6)</u>**

In *Davis v. Monroe County Board of Education,* 526 U.S. 629 (1999), the defendant brought a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failing to state a claim upon which relief could be granted. The Supreme Court in *Davis,* relying upon *Summit Health, Ltd.* v. *Pinhas*, 500 U.S. 322, 325, 114 L.Ed.2d 366, 111 S.Ct. 1842 (1991) stated, "in reviewing the legal sufficiency of petitioner's cause of action, 'we must assume the truth of the material facts as alleged in the complaint.'" *Id* at 633. The Court went on to hold that it was error to dismiss plaintiff's Title IX cause of action based upon peer-on-peer sexual harassment, as the Court could not say "beyond doubt that [petitioner] can prove no set of facts in support of [her] claim which would entitle [her] to relief." *Davis* at 654 citing *Conley* v. *Gibson*, 355 U.S. 41, 45-46, 2 L.Ed.2d 80, 78 S. Ct. 99 (1957); and also citing *Scheuer* v. *Rhodes*, 416 U.S. 232, 236, 40 L.Ed.2d 90, 94 S.Ct. 1683 (1974) ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims").

The allegations of plaintiff's Complaint in *Davis* are similar in substance as Plaintiff's allegations in the instant case. The *Davis* allegation against the school district under Title IX alleged that she was subjected to repeated acts of harassment over a period of 5 months, that the harassment was severe, pervasive and objectively offensive so as to create a hostile and abusing school environment in violation of Title IX, and that Plaintiff could prove the school had actual knowledge of the harassment and acted with utter indifference in failing to investigate and put an end to the harassment.

DOE'S allegations in his Complaint filed before this Court include, but are not limited to:

- That Plaintiff was a minor and at all times a student at the Defendant school (par. 5, p. 2 of General Allegations of The Parties)

-   The Defendant was the recipient of federal funds for the school's operations including educational programs and activities. (Count I par. 2)

-   From the period of November 2004 and occurring thereafter on a regular and consistent basis DOE was subjected to both physical and verbal misconduct of a sexual nature perpetrated by several other male students. (Count I par. 5 and 10)

-   The harassment was done in concert with other male students, who substantially assisted one another and also encouraged each other in repeatedly subjecting Plaintiff to physical and verbal attacks of a sexually charged nature (Count V par. 459)

-   The physical harassment consisted predominantly of repeated grabbing, twisting, and hitting DOE in the testicles. (Count I par. 6)

-   School officials, specifically the school administrator and principle, DENNIS McNAMARA, was aware of this ongoing "practice" at the BRIMFILED GRADE SCHOOL, of male students hitting each other in the testicles known as "sac tabbing" (Plaintiff's Complaint erroneously identified the term "tabbing" as "stabbing"). (Count I par. 60)

-   The physical trauma to DOE'S testicles resulted in pain, swelling, and aggravation to his pre-existing condition of left testicular varicocele, necessitating surgery to his left testes by a pediatric urologist (Count I par. 11, 58, 61, and 62; Count IV par. 369). That further, the causal relationship between the repeated attacks to DOE'S groin and the aggravation to his left testicular condition was supported by the records of Plaintiff's treating pediatric urologist. (Count I. Par. 61-62)

-   That further the harassment caused significant humiliation of Plaintiff as well as mental and emotional distress, including anxiety, depression, insomnia, fatigue, sadness and loss of interest in his usual activities. (Count I par. 11; Count IV par. 369)

-   The harassment was severe and also pervasive so as to create a hostile and abusive educational environment, thus denying DOE of equal access to his education under Title IX. (Count I par. 9)

-   School officials were repeatedly told of the ongoing sexual harassment and failed to take reasonable steps to prevent further sexual harassment, thereby subjecting Plaintiff to further harassment and retaliation against DOE for reporting the events. (Count I par. 24, 28 30, 39, 41, 42, 43, 47, 50, 54, 55, 56, 58, 59, 60, 65-68, 71-77). That further, in response to notice of the sexual harassment, school officials blamed the victim for complaining, humiliated and reprimanded Plaintiff, and attempted to intimidate Plaintiff thereby dissuading him from complaining of any future attacks. (Count I par. 72-82; Count II par. 178)

-   That in September 2005 after the repeated notice to school officials and failure of the school to stop the harassment, Plaintiff's parents finally filed a police report with the

Peoria Sheriff's Department, describing the sexual harassment and ongoing battery to DOE. (Count I par 57)

- That as a further consequence of the Defendant school district failing to take reasonable steps to stop the harassment of Plaintiff, DOE was removed from BRIMFILED GRADE SCHOOL to another school outside of the Plaintiff's district. (Count I par. 85)

At this stage in the proceedings the Court must construe all material facts pled in Plaintiff's Complaint are true. *Davis*, 526 U.S. at 633. When considering motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts must presume all factual allegations of complaint to be true and must draw any reasonable inferences in favor of nonmoving party. *Bayonne v Pitney Bowes, Inc*. (2004, DC Conn) 15 AD Cas 341. Plaintiff is not required to meet an evidentiary standard of making a prima facie case and providing the Court with corresponding facts to support each element of his claim as the Defendant BRIMFIELD SCHOOL DISTRICT imposes upon DOE. *Kolupa* at 714-715.

Moreover, the Motions to Dismiss for failure to state a cause of action upon which relief can be granted are not favored and rarely granted. The Supreme Court has held "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bell Atl. Corp. v Twombly*, (2007, US) 127 S.Ct. 1955, 2007-1 CCH Trade Cases P 75709, 20 FLW Fed S 267. Motion to dismiss for failure to state a claim may be granted only in clearest cases, and must be denied when additional facts are required before ultimate judgment may be arrived at. *Swartz v Eberly* (1962, ED Pa) 212 F. Supp 32.

In *Seamons v. Snow* 84 F.3d 1226, 1231-1232 (10th Cir. 1996) the Court held "Dismissal is inappropriate under Fed. R. Civ. P. 12(b)(6) unless the plaintiff can prove no set of facts in support of his claims to entitle him to relief. *Id.* The court must accept as true all the factual allegations in the complaint, construe them in a light most favorable to the plaintiff, and resolve

6

all reasonable inferences in plaintiff's favor." Relying on *Arnold v. McClain*, 926 F.2d 963, 965 (10th Cir. 1991); *Freeman v. Department of Corrections*, 949 F.2d 360, 361 (10th Cir. 1991). On motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must be liberally construed in light most favorable to plaintiff and should not be dismissed simply because the court is doubtful that plaintiff will be able to prove all of the necessary factual allegations. *Cagin, D.O. v McFarland Clinic, P.C.*, (2004, SD Iowa) 317 F.Supp.2d 964. The court may dismiss a complaint for failure to state a claim upon which relief may be granted only if it appears that plaintiff can prove no set of facts entitling plaintiff to relief; court must accept all well-pleaded allegations of complaint as true and must view those allegations in light most favorable to plaintiff. *Greene-Thapedi v. United State*s, (2003, ND Ill) 92 AFTR 2d 7339. Motions to dismiss for failure to state a claim are viewed with disfavor and are rarely granted. *Felder v. Winn-Dixie La., Inc.*, (2003, ED La) 9 BNA WH Cas 2d 585. Courts generally disfavor Fed. R. Civ. P. 12(b)(6) motions to dismiss and only grant such motions in rare circumstances. *Altadis USA, Inc. v. NPR, Inc.*, (2004, MD Fla) 308 F.Supp.2d 1304, 2004 AMC 1080, 17 FLW Fed D 482.

The threshold is exceedingly low for a complaint to survive motion to dismiss for failure to state claim. *DIRECTV, Inc. v. Cope,* (2003, MD Ala) 301 F.Supp.2d 1303.

The court's function in ruling on a motion to dismiss for failure to state a claim is not to weigh potential evidence that parties might present at trial, but to assess whether the complaint alone is legally sufficient to state a claim for which relief may be granted, and in making a determination, the court may not look to other pleadings or documents to resolve factual disputes. *Swoboda v. Dubach*, (1993, CA10 Kan) 992 F2d 286.

**Title IX Does Not Create a Higher Burden than Title VII**

Defendants claim that Plaintiff's claim under Title IX for peer-on-peer sexual harassment sets a "higher bar" for a private right of action, and is not actionable for "simple acts of teasing and name calling." Defendants focus upon the ***nature*** of the harassment in this respect and not the issue of liability against the school district based upon notice and the Defendants' response to said harassment. Plaintiff does not dispute that the allegations of liability against a Defendant school district in the form of sexual harassment under Title IX require Plaintiff to show that the Defendant was "deliberately indifferent". However, there is no greater burden on Plaintiff under Title IX to prove that the nature and extent of the alleged illegal conduct is any more severe or pervasive than that necessary under Title VII.

**Title IX**

Title IX provides in relevant part:

"no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."
*20 U.S.C.S Sec. 1681*

In order to state a claim for damages under Title IX, based upon a theory of peer harassment, Plaintiff must allege:

(1) that Plaintiff is a member of a protected group; (2) that he or she was subject to unwelcome sexual harassment; (3) that the harassment was because of his or her sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of his or her education and create an abusive educational environment; and (5) that the institution knew of the harassment and was deliberately indifferent to the harassment. *42 U.S.C Sec. 2000e*

See *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 91 L.Ed.2d 49, 106 S.Ct. 2399 (1986);

*Hall v. Bodine Electric, Co.,* 276 F.3d. 345, 354-55 (7th Cir. 2002); *Kampmier v. Emeritus*

*Corporation*, 472 F.3d. 930, 940 (7th Cir. 2007); *Parkins v. Civil Constructors of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir. 1998)

**Title VII Cases are Authoritative for Analyzing Title IX**

The Defendant claims that Title VII cases are not appropriate for defining sexual harassment in the context of school environments. Despite this contention, the Supreme Court has made clear that "Title VII precedent is appropriate for analyzing hostile environment sexual harassment claims under Title IX.

In *Franklin v. Gwinnett County Public Schools*, 503 U.S. 60, 117 L.Ed.2d 208, 112 S.Ct. 1028 (1992), the Supreme Court considered a Title IX claim filed against a school district for its failure to stop the sexual harassment of a student by a teacher. The Court in this case analyzed the claim for sexual harassment under Title IX with sexual harassment cases litigated by employees against employers under Title VII. The Court held that similar to Title VII, which creates a cause of action for discrimination because of sex, Title IX also creates a cause of action against a school district when the school district intentionally fails to intervene and put a stop to the harassment. The Court in *Franklin* essentially held that a Plaintiff is entitled to damages for violations of Title IX under what is essentially a theory of hostile work environment, which could be filed by both employees and students.

In *Davis v. Monroe County Board of Education*, 526 U.S. 629 (1999), the Supreme Court recognized a cause of action for peer-on-peer sexual harassment. The Court relied upon several Title VII decisions in defining the type of conduct that constitutes sexual harassment in the context of a school environment under Title IX, including *Oncale v. Sundowner Offshore Services, Inc.,* 23 U.S. 75 (1998) and *Meritor Savings Bank, FSB v. Vinson,* 477 U.S. 57 (1986). Thus, the Court made it clear that Title VII cases are both

instructive and authoritative for purposes of Title IX claims.  The Supreme Court in *Davis*

held that students should be given the same protections under Title IX as those individual

claimants who file litigation against their employers under Title VII.

Key to the Supreme Court's comparison of Title VII cases with Title IX claims in

*Davis* was the Court's recognition that the available relief and potential remedies for victims

of sexual harassment in school environments are far more restrictive than those available to

adults in the context of employment:

> "In these circumstances, the recipient retains substantial control over the
> context in which the harassment occurs. More importantly, however, in this
> setting the Board exercises significant control over the harasser. We have
> observed, for example, "that the nature of [the State's] power [over public
> schoolchildren] is custodial and tutelary, permitting a degree of supervision
> and control that could not be exercised over free adults." *Vernonia School
> Dist. 47J* v. *Acton*, 515 U.S. 646, 655, 132 L.Ed. 2d 564, 115 S.Ct. 2386
> (1995). On more than one occasion, this Court has recognized the
> importance of school officials' "comprehensive authority . . . , consistent
> with fundamental constitutional safeguards, to prescribe and control
> conduct in the schools." *Tinker* v. *Des Moines Independent Community
> School Dist.*, 393 U.S. 503, 507, 21 L.Ed.2d 731, 89 S.Ct. 733 (1969); see
> also *New Jersey* v. *T. L. O.*, 469 U.S. 325, 342, n. 9, 83 L.Ed.2d 720, 105
> S.Ct. 733 (1985) ("The maintenance of discipline in the schools requires not
> only that students be restrained from assaulting one another, abusing drugs
> and alcohol, and committing other crimes, but also that students conform
> themselves to the standards of conduct prescribed by school authorities");
> 74 F.3d at 1193 ("The ability to control and influence behavior exists to an
> even greater extent in the classroom than in the workplace . . ."). The
> common law, too, recognizes the school's disciplinary authority. See
> Restatement (Second) of Torts § 152 (1965). *Id* at 646.

Thus, when examining all of the evidence presented to the trier of fact on whether or not

the school's response was reasonable, careful consideration must be given to the limited control

and overall vulnerability of a minor victim.  Unlike adults, students cannot simply terminate the

relationship, or employ the intervention of higher authority or law enforcement on their own

initiative.

10

The Seventh Circuit Court of Appeals has endorsed the utilization of Title VII decisions as precedent to determine if sexual harassment is sufficiently severe or pervasive to constitute illegal discrimination under Title IX because of sex. *Smith v. Metro. Sch. Dist. Perry Township, 128 F.3d 1014, 1019-21, 1023 (7th Cir. 1997)*

The definition of what conduct constitutes sexual harassment under both Title VII and Title IX are essentially the same. The challenged illegal acts must be "severe" or "pervasive" in order to be actionable under both Title VII and Title IX. The difference in the evaluation of the facts giving rise to claims under each Act is the context in which the harassment occurred, which is either a workplace environment or in an academic setting.

In *Davis*, the Supreme Court discussed the established safeguards in relying upon Title VII precedent in the context of Title IX claims for sexual harassment. The Court explained that any claim for sexual harassment must be considered in light of all the facts of the case and circumstances. The Court stated:

> "Whether gender-oriented conduct rises to the level of actionable "harassment" thus "depends on a constellation of surrounding circumstances, expectations, and relationships," *Oncale* v. *Sundowner Offshore Services, Inc.*, 523 U.S. 75, 82, 140 L.Ed.2d 201, 118 S.Ct. 998 (1998), including, but not limited to, the ages of the harasser and the victim and the number of individuals involved, see OCR Title IX Guidelines 12041-12042. Courts, moreover, must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults. See, *e.g*., Brief for National School Boards Association et al. as *Amici Curiae* 11 (describing "dizzying array of immature . . . behaviors by students"). Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it. Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target differences in gender. **Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect."** (emphasis added) 526 U.S. at

651-52

In addition to the differences in the totality of circumstances in which sexual harassment claims arise under Title VII and Title IX in the context of peer-on-peer harassment, the legal standards for assessing a defendant's liability based upon violations of Title VII and Title IX are also different.  The Supreme Court in *Davis* held that a Plaintiff must prove that the school was "deliberately indifferent" upon notice of the harassment in order to be liable for damages under Title IX.  *Id* at 644-645.   In contrast, under Title VII, an employer may be liable, under certain circumstances, for a supervisor's harassment of a subordinate even if the employer claims that that it did not have notice of the sexual harassment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998).

**<u>Same Sex Sexual Harassment</u>**

In *Oncale v. Sundowner Offshore Services, Inc.,* 23 U.S. 75 (1998), a unanimous decision by the U.S. Supreme Court held that Title VII of the Civil Rights Act of 1964 protected both men and women in the workplace and further afforded protection even if the alleged harassment was by a person of the same-sex.  *Oncale* is instructive for analysis of the present case before the Court as it discusses the intent in determining if discrimination is "based on sex."

**<u>Because of Sex Does Not Require Proof of Sexual Desire or Intention</u>**

BRIMFIELD'S Motion to Dismiss misconstrues the law relevant to the requirement of "based on sex" under Title IX.  In the Defendant's Memorandum of Law BRIMFIELD states that Plaintiff fails to allege facts to establish that the repeated grabbing, twisting, and striking of Plaintiff's testicles and the offensive statements of a sexually charged nature to which Plaintiff was subjected was for "sexual self-stimulation" or for the purpose of "homosexual or effeminate behavior."  The assertion that Plaintiff is required to plead, and prove these facts, is in error.

"Based on sex" does not mean because of sexual desire or intent. Simply "based on sex" means that the individual's sex (that being male or female) was a considered factor for the type of discrimination to which they were subjected. In this case, it is reasonable to conceive the circumstances in which the attributes of DOE, being a more passive, compliant, quite male student, who achieved academically, and who generally followed school rules, would be a target of bullying by the character of boys at issue. In a phrase, DOE was the subject of harassment because he was "*not man enough.*"

The Supreme Court in *Oncale* clearly held that the critical element which Plaintiff prove, that the challenged conduct was because of his or her "sex" does not require that the Plaintiff show the harassment was motivated by sexual desire, be filled with sexual proposals, or made with the intent of obtaining sexual activity. *Id*. 80-81. The Court specifically explained that a trier of fact could reasonably conclude that discrimination occurred **"if, for example, a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace." Id** at 80. The Plaintiff does not need to show verbal or physical harassment that are filled with sexual innuendo or content. Plaintiff is only obligated to show that his or her sex was a basis for the offensive behavior to which they were subjected.

In relying upon *Harris v. Forklift Systems, Inc.,* 510 U.S. 19, 21 (1993) the Court in *Oncale* stated that the critical issue is "…whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the opposite sex are not exposed." *Oncale* at 80 citing *Harris* at 21 (1993). The facts upon which the Supreme Court in *Oncale* reversed and remanded the decision of the Fifth Circuit were no more compelling on the issue of "based on sex" than the instant case before the Court. The Plaintiff, Joseph Oncale,

was a male employee on an eight-man oil platform crew working in the Gulf of Mexico.  No female employees were ever identified in the facts of the case for purposes of comparing the disparate treatment for the purpose of determining if the discrimination was based upon sex.  Oncale's allegations of sexual harassment were entirely limited to claims of humiliating verbal and physical acts to which he was subjected by some of the male co-workers in the presence of other male employees.  Plaintiff alleged that he was physically assaulted in a sexual manner, but the details were not described in the case.  523 U.S. at 77.

In *Smith v. Sheahan*, 189 F.3d 529 (7th Cir. 1999), the Seventh Circuit Court of Appeals specifically addressed the precise issue of determining if Plaintiff had met her burden of proof in demonstrating that the unlawful harassment was based upon her sex in violation of Title VII.  As well, the case is also instructive for the purpose of construing the type of illegal conduct that meets the definition of "severe" even when such acts are isolated or a single event (see below).

In *Smith*, the Plaintiff, Valerie Smith, was a female guard at the Cook County Jail.  The basis for Smith's Complaint was a single event, in which a male co-worker verbally insulted her by calling Smith a "bitch", telling her he was going to "fuck [her] up" and pinning Smith against a wall while twisting her wrist causing serious injury.  The attack of the Plaintiff was not sexual in nature at all, and for all intent and purpose had the character of aggressive and targeted bullying.  Smith supported her claim that the incident was because of her sex by presenting evidence that her attacker treated other females at the facility in a similarly aggressive and demeaning manner – creating unequal terms and conditions of the working environment.  Smith, presented evidence that the harasser had in the past demanded that a female inmate give him extra food from the central kitchen and called her a "bitch", threatening to "kick her ass" when she refused.  She also presented affidavits from other female guards, one who stated that the

14

harasser had made sexist remarks about her body.  Another guard claimed that the harasser tried

to physically storm her work area making vulgar threats of physical harm.

Critical to the opinion of the Seventh Circuit was the recognition that often times, acts of

discrimination, particularly in the context of sexual harassment are not motivated by sexual

desire but by power and control.  This is the very heart of Plaintiff's present case before the

Court.

The Court in *Smith* held that the attack on Plaintiff by her harasser constituted prohibited

sexual harassment.  The Court went on to state:

> "Smith furnished affidavits from a number of other guards documenting Gamble's
> recurrent hostile behavior toward his female co-workers. ***These incidents are
> unmatched by similar reports of verbally and physically aggressive behavior
> toward male co-workers***. This evidence would permit a trier of fact to draw the
> inference that Gamble chooses to harass women but not men. Depending on how
> the jury evaluates them, the explicitly gendered and sexually charged epithets
> Gamble hurls at his victims ("I'm going to fuck you up, bitch") may provide
> additional evidence that Gamble's hostility toward his female coworkers is based
> on their sex. *See Carr*, 32 F.3d at 1010; *see also Johnson v. Hondo, Inc*., 125 F.3d
> 408, 412 (7th Cir. 1997). It makes no difference that the assaults and the epithets
> sounded more like expressions of sex-based animus rather than misdirected sexual
> desire (although power plays may lie just below the surface of much of the latter
> behavior as well). Either is actionable under Title VII as long as there is evidence
> suggesting that the objectionable workplace behavior is based on the sex of the
> target. *Oncale*, 118 S.Ct. at 1002."  189 F.3d at 533.

In distinguishing the Defendant's case law, the Tenth Circuit Court of Appeals in

*Seamons v. Snow,* found that Plaintiff had not alleged facts sufficient to support his cause of

action for Title IX discrimination based upon his sex.  In this case, the defendant has stated

correctly that plaintiff had been the victim of a single act of harassment by his peers (male

football teammates of plaintiff) who taped plaintiff to a towel bar while unclothed and brought in

a female student to view plaintiff.  However, BRIMFIELD failed to acknowledge in their Motion

to Dismiss that the plaintiff in ***Seamons completely failed to complain of the offensive***

*occurrence as the basis for his claim of sexual discrimination and hostile environment*.  It was plaintiff's perception of the school's response to this isolated incident that plaintiff complained of as discriminatory in nature.  Moreover, plaintiff further did not allege that the sexual harassment by his peers occurred after his complaint to school officials.  The Court in *Seamons* held,

> "the facts alleged in the complaint, together with all reasonable inferences there from, fail to satisfy the third element listed above.  Brian has failed to allege facts sufficient to indicate that the conduct being challenged (*which it must be remembered, post dates the locker room assault*) was "sexual" in nature, as defined in the hostile environment context."  *Id* at 1232-1233

Similarly, BRIMFIELD'S reliance on *Frazier v. Fairhaven School Committee,* 276 F.3d 52 (1st Cir. 2002) is also lacking in facts analogous to Plaintiff's claim before this Court.  In *Frazier,* the entirety of plaintiff's complaint for violations of Title IX was premised upon a single incident, upon which the school's disciplinary matron (who was obviously female) entered the girl's bathroom and peered into a stall occupied by plaintiff.  Simply, there were no supporting allegations to meet the elements of discrimination based on sex, or conduct that was sufficiently severe or pervasive to constitute hostile environment under Title IX for obvious reasons.

**Plaintiff's Claim of Sexual Harassment was Because of His Sex**

In order to understand the theory of Plaintiff's case one must start with the basic premise that teasing, insults, humiliation, aggression, intimidation, physical injury, and overall bullying may rise to the level of actionable sexual harassment.  See *Oncale v. Sundowner Offshore Services Inc.,* 523 U.C. 75 (1998); *Doe v. Perry Community School District,* 316 F.Supp.2d 809 (SD Iowa 2004).   Further, one must recognize that misconduct which rises to the level of sexual harassment, at its very core, is an abuse of power and control, and not misdirected sexual desire.  See *Smith v. Sheahan*, 189 F.3d 529 (7th Cir. 1999).

The mentality of male students who harass other boys may be cultivated, and even condoned by adults in certain school environments that affirm strong and overtly aggressive conduct by male students to the victimization of more passive, less assertive, sensitive, and otherwise vulnerable boys. In cases where the harassment occurs with groups of boys, often a desire to avoid being the target of the bullying by members of the group and/or competition for attention/ego result in serial gang stalking of victims.

The consequences of sexual harassment, if left unaddressed by school officials, often results in desensitization of peers, teachers, and coaches towards this highly offensive and outrageous behavior. Indifference by school districts to ongoing peer on peer sexual harassment, while unbelievable, is likely to occur in those environments where there is an underlying culture of ignorance that subscribes to archaic perceptions about young men needing to be strong and aggressive. Responses from coaches and administrators such as in the present case, where the male victim was essentially told to toughen up and stop acting like a little girl only reinforces the problem, creates further insecurity, humiliation, and a sense of isolation for reporting this highly offensive misconduct.

Sexual harassment on the most basic level is bullying. The obvious reason for which Plaintiff was repeatedly harassed was because the aggressors believed Plaintiff was not man enough. There can be little doubt that this type of violent and humiliating harassment was because of Plaintiff's sex.

Plaintiff has stated in his Complaint that the nature of the sexual harassment was in the form of aggressive and violent bullying by male students and that this was a pattern of organized behavior that was targeted against him and known by school officials to occur with other boys in the school. There is absolutely no allegation of fact or inference that female students were

subjected to similar terms, conditions and aggressive conduct as DOE and a few fellow male students. At this stage, the Court must allow Plaintiff to move forward with his case and develop the supporting facts.

### Plaintiff Need only Allege and Prove that Sex was a Motivating Factor and Not the Sole Factor for the Harassment

Title VII makes it unlawful for an employer "to discriminate against any individual . . ., *because of* such individual's race, color, religion, sex, or national origin." *42 U.S.C. Sec. 2000e-2(a)(1)* In 1991, Congress amended Title VII, adding that "an unlawful employment practice is established when the complaining party demonstrates that race . . . was a motivating factor for any employment practice, even though other factors also motivated the practice." *42 U.S.C. Sec. 2000e-2(m)*

In *Desert Palace, Inc., v. Costa,* 539 U.S. 90 (2003), the Supreme Court held that plaintiff need only demonstrate that her sex was a considered factor with respect to plaintiff's claim of unlawful conduct in violation of Title VII. Thus, she was not required to prove that her sex was the sole reason for the alleged discrimination.

### Severe or Pervasive

The repeated assaults on Plaintiff's testicles was so severe that it resulted in an aggravation to an pre-existing condition, thereby necessitating surgery on DOE'S left testicle. Even following surgery, while in the acute phase of healing, Plaintiff returned to school, despite his fear of the offending group of boys, only to be forcibly struck again in the testicle, causing one of his sutures to rupture. Plaintiff was also repeatedly teased and mocked by the male students about his testicles and other matters involving sexual content. When DOE attempted to seek intervention and help from school officials he was essentially told to toughen up and stop

acting like a girl.  This only caused further insecurity, humiliation, and a sense of isolation as a consequence of Plaintiff's report of the highly offensive harassment.

BRIMFIELD'S suggestion that the circumstances of the present case are merely grade school "male on male horse play",  "simple teasing" or "adolescent roughhousing" is disingenuous and a residual ripple from the same pond of ignorance that cultivated and emboldened the attitude of DOE'S perpetrators.   Moreover, Defendants' proposition that bullying in the form of teasing, insults, aggression, humiliation, intimidation, and physical injury cannot rise to the level of sexual harassment and discrimination in violation of Title IX is without authority and merit.

### Allegations Giving Rise to the Standard of Care and Duties of a Title IX Recipient

Plaintiff alleges in Count I against BRIMFIELD based upon violations of Title IX, that upon notice of the sexual harassment the Defendant had a duty to act in a manner which was reasonable so as to stop the harassment and prevent further harassment of DOE.  It is in this context that Plaintiff alleges facts supporting Plaintiff's claim that the Defendants' response was not only unreasonable but was tantamount to "utter disregard."

Plaintiff alleges supporting facts relative to the Defendants' duty and the standard of care to which BRIMFIELD's actions should be examined.  Plaintiff claims that BRIMFIELD was required to follow Federal Regulations of the U.S. Department of Education, to educate students and faculty on the definition of sexual harassment, the type of conduct that would be prohibited at school, the consequences to students engaging in such prohibited conduct, reporting policies for allegations of sexual harassment, procedures to address complaints of sexual harassment, etc… (See Count I par. 86-88).

BRIMFIELD argues that Title IX cannot be based upon a school district's failure to follow federal regulations promulgated by the U.S. Department of Education. Defendants point to several cases for this proposition, including *Frazier*. However, Defendants' construction of this line of cases is in error. BRIMFIELD states,

> "At least two other courts have also considered this issue and both agree that the judicially created cause of action under Title IX does not include a defendant's failure to follow federal regulations. *Seamons v. Snow*, 84 F.3d 1226, 1233 (10th Cir. 1996); and *Bougher v. University of Pittsburg*, 713 F.Supp. 139, 143-44 (WD Pa 1989) (aff'd.) 882 F.2d 74 (3rd Cir. 1989)."

Defendants' point is unclear. If BRIMFIELD is stating that failing to promulgate the required policies and procedures for addressing sexual harassment in schools is not in and of itself discrimination, Plaintiff agrees. However, the Defendants also move to have the allegations related to the failure to promulgate policies and procedures for sexual harassment stricken as irrelevant. This is absurd. What is and what is not relevant is a matter of admissibility, not pleading,

Plaintiff requests that the allegations of the Complaint related to the duties and obligations of BRIMFIELD under the federal regulations are not stricken from the pleading.

WHEREFORE, Plaintiff, by and through her respective attorneys respectfully requests that the Defendants' Motion to Dismiss be denied, or alternatively, that Plaintiff be allowed to Amend the Complaint in order to allege all other matters, which the Court deems were deficient therein.

JANE DOE, Individually and as Mother and Next Friend of JOHN DOE, a Minor,


BY:____/s/  KATRINA M. TARASKA____
          One of her attorneys

KATRINA M. TARASKA
M. MICHAEL WATERS
**VONACHEN, LAWLESS, TRAGER & SLEVIN**
456 Fulton, Suite 425
Peoria, IL 61602
Telephone: 309/676-8986
Facsimile: 309/676-4130

# CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2007, I caused the foregoing PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS to be electronically filed with the Clerk of the United States District Court for the Central District of Illinois, Peoria Division. Additionally, said document was delivered to the following parties on said date by enclosing it in an envelope, affixing first class postage and depositing into a US Post Office mail box, or by hand delivery:

Mr. John P. Fleming
Fleming & Umland
411 Hamilton Blvd., Suite 1518
Peoria, IL  61602

Mr. Gerald W. Brady, Jr.
Attorney at Law
1133 N. North Street
Peoria, IL  61606

Mr. David A. Perkins
Heyl, Royster, Voelker & Allen
124 SW Adams Street, Suite 600
Peoria, IL  61602

Ms. Julie L. Galassi
Hasselberg, Rock, Bell & Kuppler
4600 Brandywine Drive
Peoria, IL  61614

Mr. Richard L. Steagall
Nicoara &  Steagall
416 Main Street, Suite 815
Peoria, IL  61602

John E. Cassidy III
Cassidy & Mueller
416 Main Street, Suite 323
Peoria, IL  61602


_    /s/  Katrina M. Taraska_____


Katrina M. Taraska
M. Michael Waters
VONACHEN, LAWLESS, TRAGER & SLEVIN
456 Fulton Street, Suite 425
Peoria, IL  61602
Telephone: (309) 676-8986
Facsimile:  (309) 676-4130