IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| Jane Doe, Individually and as Mother and Next Friend of John Doe, a Minor )<br><br>Plaintiff, )<br><br>v. )<br><br>Brimfield Grade School et al., )<br><br>Defendants. ) | No. 07-CV-1205 |

**REPORT AND RECOMMENDATION**

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

    This case is before the Court for a Report and Recommendation on several motions to dismiss and strike by Defendants (d/e's 11, 12, 19, 27, 28, 31, 32, 44). For the reasons below, the Court recommends that the attorney's fees sought in the state law claims for battery and joint enterprise be stricken (Counts IV and V). The Court further recommends that certain paragraphs in the Complaint regarding the failure to comply with federal regulations be stricken. The Court otherwise recommends that the motions be denied.

**Standard**

To state a claim under federal notice pleading standards, all the Complaint must do is set forth a "short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Factual allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted). The "allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level' . . . ." Id., *quoting* Bell Atlantic, 127 S.Ct. at 1965, 1973 n. 14.  "Although this does 'not require heightened fact pleading of specifics,' it does require the complaint to contain 'enough facts to state a claim to relief that is plausible on its face.'" Killingsworth v. HSBC Bank Nevada, 507 F.3d 614, 618 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. at 1974.

**Allegations**

Plaintiff "Jane Doe" alleges that her minor son "John" was sexually harassed at school by six other male students.[1]  The harassment was both

---

[1] Pseudonyms are used to protect the identities of the minors.

verbal and physical, with the physical "sexual misconduct consist[ing] predominantly of grabbing, twisting, and hitting" John's testicles repeatedly beginning in November 2004[2] and continuing to November 2005. (Complaint ¶ 6, 85). The school's principal was "aware of the ongoing practice of male students hitting each other in the testicles, also known as "sac stabbing." (Complaint ¶ 60). John and his parents repeatedly objected to this abuse, trying to impress the seriousness of the situation on school officials, but the school failed to take reasonable steps to prevent the abuse or the retaliation suffered by John for having objected to the abuse. (Complaint ¶ 24). As a result of the repeated trauma, John suffered significant swelling and pain in his testicles.

In January 2005, John's father "specifically addressed the students on the boy's basketball team and told them that he was aware of the boys repeatedly hitting John in the testicles and their actions were serious and caused significant swelling and pain in John's testicles." (Complaint ¶ 46). The basketball coach did nothing in response to the mocking that occurred after this speech by one of the defendant students ("Brian") in the presence of other students, the coach and John's father. Despite continued notice of

---

[2]John was 12 years old in November 2004. (Complaint para. 1, Count 1).

the ongoing assaults, the school still failed to reasonably respond and the abuse continued.

In September 2005, John's parents filed a police report against the defendant students. John's father met with the school principal and informed him that the abuse had aggravated John's existing varicocele to the point that surgery on John's testicle was required. (Complaint, ¶ 59). John had the surgery in September 2005, the surgical report indicating "'painful varicocele made worse by repeat scrotal trauma.'" (Complaint ¶ 62). John's parents continued to object and try to persuade the school to take reasonable action to prevent the abuse, again to no avail.

On his return to school after the surgery, John was teased about his surgery, and, intentionally struck in the testicles again. His stitches popped and his surgical incision broke open. (Complaint ¶ 73). The school's principal still did nothing to correct the situation. (Complaint ¶ 74). Instead, John was reprimanded by his coach for complaining, advising John that he needed to "stick up for himself." (Complaint ¶ 82). Further, John's mother, a teacher at the school, was retaliated against for voicing objections, through false accusations of unprofessional conduct and challenges to her competence as a teacher. (Complaint ¶ 273). Because of the school's

repeated refusal to take reasonable steps to protect John, his parents removed him from the school in December 2005. (Complaint ¶ 85).

Plaintiffs filed this complaint in August 2007. Plaintiffs pursue claims for sexual harassment and retaliation in violation of Title IX against the school and school district. (Complaint, Counts I-III). Plaintiffs also pursue state claims of battery and joint enterprise against the students responsible for the alleged harassment, as well as a state claim against their parents under the Illinois Parental Responsibility Law. (Complaint, Counts IV-VI).

## Analysis

I.  **Attorneys fees sought in state law counts (Counts IV-VI) (battery, joint enterprise and parental responsibility)**

Illinois common law follows the "American Rule": attorney's fees and costs are generally not recoverable by prevailing parties, unless provided for by statute or contract. Morris B. Chapman & Associates, Ltd. v. Kitzman, 193 Ill.2d 560, 572 (2000). Plaintiffs assert that attorney's fees may be considered when awarding punitive damages, citing International Union of Operating Engineers, Local 150 v. Lower Excavating Co., 225 Ill.2d 456 (2006). However, consideration of attorney's fees in fixing a punitive damage award does not support the conclusion that attorney's fees are recoverable themselves. International, 225 Ill.2d at 491 ("While

attorney fees can be considered when awarding punitive damages, it is not within the purview of this court to award such fees outright, nor should they be awarded under the guise of a punitive damages award."). Plaintiff identifies no statutory or other basis for recovering attorney's fees on Counts IV and V, the battery and joint enterprise claims. Accordingly, the Court will recommend the prayer for attorney's fees in Counts IV and V be stricken.

The "Charlie" and "Easy" defendants also move to strike the attorney's fees sought under Count VI, the Parental Responsibility Law. However, 740 ILCS 115/3 of that law expressly allows the recovery of reasonable attorney's fees "to a plaintiff that is not a governmental unit." Accordingly, the Court will recommend the denial the motions to the extent they seek to strike the attorney's fees from Count VI.

## II. Damages Sought in Count VI (Parental Responsibility Law)

Plaintiffs allege "[t]hat pursuant to 740 ILCS 115/3, the Parental Responsibility Law, the parent and/or legal guardians of the respective Defendant male students, are liable for the actual damages for the willful and malicious acts of such minor which causes injury to a person, including the payment of reasonable attorney's fees." (Complaint ¶ 573). They seek

a judgment "not to exceed the limitations on damages as set forth in 740 ILCS 115/5, for an amount that a jury would find to be fair and reasonable to compensate [the minor] for his injuries, and for reasonable attorneys fees and costs associated with this claim." (Complaint p. 17).

Defendants contend that recovery of damages in Count VI is limited to the medical and hospital bills incurred. 740 ILCS 115/5. Plaintiffs concede this, but argue that "Defendants' semantical arguments ought to more properly be reserved for the jury instruction." (d/e 39, p.3). Defendants' problem appears to be with Plaintiffs' request for "actual damages" and "fair and reasonable damages."

The Court believes it unnecessary to strike the phrases "actual damages" or "fair and reasonable damages" because the prayer for relief in Count VI already expressly limits recovery to that allowed by 740 ILCS 115/5, a limit which Plaintiffs concede. The Court will accordingly recommend denial of the motions to this extent.

### III.    Motion for a More Definite Statement

The "Charlie" defendants move for a more definite statement on the state claims. (d/e 27). They argue that the allegations are too imprecise to draft a responsive pleading. In particular, they assert that, "As far as

Defendant can tell, Plaintiff may only be alleging that he committed verbal misconduct . . . ." (d/e 27, ¶ 4).

The Court does not believe that the allegations are too imprecise to draft an affirmative defense. Federal notice pleading standards apply to the state claims in this case. Beanstalk Group, Inc. v. AM General Corp., 283 F.3d 856, 863 (7th Cir. 2002). *All* of the defendant students are alleged to have participate in the alleged verbal *and* physical abuse from November 2004 to November 2005, including the "sac stabbing." John does not have to allege the exact dates that Charlie struck him in order to survive a motion to dismiss. The Charlie defendants may seek more specific information from Plaintiffs in discovery.

**IV. Motion to Dismiss by School and School District**

The school and school district (collectively, the "school") assert that Plaintiffs fail to state a claim under Title IX.

Title IX provides:

> No person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance, . . .

20 U.S.C. § 1681(a); Jackson v. Birmingham Bd. of Educ., 544 U.S. 167, 173 (2005)(". . . Title IX, . . ., broadly prohibits a funding recipient from

subjecting any person to 'discrimination' 'on the basis of sex.'"). Title IX covers student-on-student sexual harassment:

> The Supreme Court has held that a school district receiving federal funding may be liable for damages under title IX when one student sexually harasses another. *Davis v. Monroe County Bd. of Education*, 526 U.S. 629, 633, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). The court established in *Davis* that liability may exist "where [funding recipients] are deliberately indifferent to sexual harassment, of which they have actual knowledge, that is so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school."

<u>Gabrielle M. v. Park Forest-Chicago Heights, Illinois School Dist.</u>, 315 F.3d 817, 821 (7th Cir. 2003), *quoting* <u>Davis</u>, 526 U.S. at 650. "Once school officials have actual notice of sexual harassment, *Davis* imposes a duty to act." <u>Gabrielle</u>, 315 F.3d at 824. School administrators are "'deliberately indifferent' to acts of student-on-student harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." <u>Davis</u>, 526 U.S. at 649.

"[A] plaintiff must establish sexual harassment . . . that is so severe, pervasive, and objectively offensive, and that so undermines and detracts from the victims' educational experience, that the victim-students are effectively denied equal access to an institution's resources and

opportunities." Davis, 526 U.S. at 651. "Damages are not available for simple acts of teasing and name-calling among school children, however, even where these comments target difference in gender. Rather, in the context of student-on-student harassment, damages are available only where the behavior is so severe, pervasive, and objectively offensive that it denies its victims the equal access to education that Title IX is designed to protect." Davis, 526 U.S. at 652.

The school seems to argue that Title IX may not cover same-sex harassment, noting that the Supreme Court has not specifically held so. (d/e 45, p. 11). However, the Supreme Court held in Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75 (1998), that same-sex harassment is covered under Title VII. Title VII cases have been relied on to support rulings under Title IX. *See* Franklin v. Gwinnett County Pub. Schools, 503 U.S. 60, 75 (1992)(Title VII hostile environment case (Meritor) cited to support sexual harassment claim under Title IX); Jackson, 544 U.S. at 175 (Title IX more broadly written than Title VII); Doe v. Univ. of Illinois, 138 F.3d 653, 665 (7th Cir. 1998)(applying Title VII cases to hostile environment claim under Title IX), *vacated on other grounds*, 526 U.S. 1142 (1999); Howell v. North Central College, 320 F.Supp.2d 717, 720 (N.D. Ill.

2004)("federal courts have looked to title VII precedent to inform their analyses of sexual discrimination claims under Title IX."). The school concedes that "[t]he lower federal courts have generally concluded that same-sex claims are viable under Title IX as they are under Title VII." (d/e 45, p. 11). The Court believes the precedent above supports that conclusion.

The school also contends that "sac stabbing" is not discrimination "based on sex" and is therefore is not actionable under Title IX. (d/e 45, pp. 8-9). The school advances that "sac stabbing" is not "engaged in for sexual self-stimulation or involved homosexual or effeminate behavior but rather was simply roughhousing or horseplay." (d/e 45, p. 9). Citing Oncale, the school asserts that same sex harassment is actionable if: 1) motivated by sexual desire; 2) motivated by hostility toward the presence of a specific gender; or 3) demonstrates differential treatment of males and females. (d/e 45, p. 12).

Oncale's examples are not exclusive, however. Sheperd v. Slater Steels Corp., 168 F.3d 998, 1009 (7th Cir. 1999)(Title VII)("*Oncale* also demonstrates that there is no singular means of establishing the discriminatory aspect of sexual harassment. So long as the plaintiff

demonstrates in some manner that he would not have been treated in the same way had he been a woman, he has proven sex discrimination."); Howell, 320 F.Supp.2d at 721-22 ("the *Oncale* Court's list of actionable same-sex harassment was instructive rather than exhaustive.").

The school does not address the viability of a "gender stereotyping" claim, which has been recognized as a possibility by the Seventh Circuit in a Title VII case. Doe v. City of Belleville, 119 F.3d 563, 580-81 (7th Cir. 1997)(harassment because plaintiff did not conform to stereotypical expectations of masculinity was actionable discrimination because of sex), *vacated and remanded on other grounds in light of* Oncale, 523 U.S. 1001; Hamm v. Weyauwega Milk Products, Inc., 332 F.3d 1058, 1064 (7th Cir. 2003)(recognizing sex stereotyping claim under Title VII but holding that evidence did not support claim). Discrimination because one's behavior does not "conform to stereotypical ideas" of one's gender can amount to actionable discrimination "based on sex." Howell, 320 F.Supp.2d at 722; Theno v. Tonganozie Unified School Dist., 377 F.Supp.2d 952, 964 (D. Kansas 2005)(discussing gender stereotyping cases).

The Court believes the allegations herein arguably give rise to such a claim.  Plaintiff assert that the school "essentially told [John] to toughen up and stop acting like a little girl . . . . .," to "stick up for himself."  (d/e 49, p. 17).  They argue that the harassment continued and was allowed to continue based on the stereotypical perception that John was "'not man enough,'" (d/e 49, p. 17), presumably to either take the abuse without complaint or to stop the abuse by himself.  In any event, the Court does not believe the school has adequately explained how "sac stabbing" falls outside Oncale's third example actionable harassment–differential treatment of males and females.

The school next asserts that the allegations do not rise to the level of harassment so  "severe, pervasive and objectively offensive" that John was denied equal access to his education.  Yet that determination "'depends on a constellation of surrounding circumstances, expectations, and relationships, . . . .,'" facts that are not in the record at this point.  Davis, 526 U.S. at 651, *quoting* Oncale v. Sundowner Offshore Serv., Inc., 523 U.S. 75, 82 (1998).  At this point the Court looks only to the allegations, accepting them as true.  According to those allegations, despite repeated and persistent notice, the school did not take reasonable action to protect

John from ongoing assaults on his testicles. As a result, John suffered repeated swelling and pain in his testicles, endured surgery on his left testicle and a split incision after the surgery, and ultimately was forced to choose between continued testicular pain and damage or leaving school. In the Court's opinion, these allegations meet the kind of "severe, pervasive and objectively offensive conduct" envisioned by Davis.

The school cites no case to support its assertion that the kind of misconduct alleged here "has traditionally been recognized as roughhousing or horseplay." (d/e 45, p. 11). The two cases that are cited by the school in which a Title IX complaint was dismissed on a rule 12(b)(6) motion are from outside the Seventh Circuit. Frazier v. Fairhaven School Committee, 276 F.3d 52 (1st Cir. 2002) involved one incident where the school's matron, responsible for maintaining discipline, allegedly "peered into the stall through a crack between the door and the wall" at the plaintiff. 276 F.3d at 65. The First Circuit in Frazier concluded that the plaintiff had not stated a claim because no inference existed that the matron had discriminated against the plaintiff because of the plaintiff's sex rather than simply "ensur[ing] that nothing was amiss." 276 F.3d at 67. This Court wonders whether the Seventh Circuit Court of Appeals would agree with

drawing that inference on a motion to dismiss, but in any event <u>Frazier</u> did not involve the kind of repeated assaults alleged here.

The second case, <u>Seamons v. Snow</u>, 84 F.3d 1226, 1232 (10th Cir. 1996), involved a school's response to a football team's hazing of the plaintiff by taping him to towel bar naked and bringing a female student into view.  The plaintiff in <u>Seamons</u> argued that the school's lack of response and the students' continued hostility constituted sexual harassment based on gender stereotyping.  84 F.3d at 1230.  The Tenth Circuit affirmed dismissal for failure to state a claim, concluding that the plaintiff had "fail[ed] to allege any facts that would suggest he was subjected to unwelcome sexual advances or requests for sexual favors, or that sex was used to contribute to a hostile environment for him."  84 F.3d at 1233. <u>Seamons</u> predates the Supreme Court's <u>Oncale</u> decision, which held that same-sex harassment is actionable under Title VII and demonstrated that "there is no singular means of establishing the discriminatory aspect of sexual harassment."  <u>Sheperd v. Slater Steels Corp.</u>, 168 F.3d 998, 1009 (7th Cir. 1999)(Title VII).  <u>Seamons</u> also predates the Seventh Circuit's

discussion of gender stereotyping in Doe v. City of Belleville, 119 F.3d 563 (7th Cir. 1997)(*vacated and remanded on other grounds*).³

The Court accordingly concludes that the allegations are sufficient to survive a motion to dismiss in this Circuit. The Court gives no opinion on the ultimate merit of the claims. The school's arguments may carry the day at summary judgment on a fully developed factual record. The Court concludes only that Plaintiffs have alleged enough facts to give notice of their claims and to raise their right to relief above a speculative level. That is all they need to do at this stage.

Lastly, the school asks to strike the allegations in paragraphs 16-17, 20-21, 23 and 86-88 of the Complaint, which allege violations of the federal regulations with which the school was required to comply. The school argues that no private cause of action exists for a violation of these federal regulations, citing Gebser v. Lago Vista Independent School Dist., 524 U.S. 274, 291-92 (1998). Plaintiff counters that

---

³It is not clear the extent to which the Tenth Circuit would allow a same-sex gender stereotyping claim. *See* Etsitty v. Utah Transit Authority, 502 F.3d 1215, 1224 (10th Cir. 2007)(declining to decide whether discrimination based on failure to conform to sex stereotypes "always constitutes discrimination"); Medina v. Income Support Div., New Mexico, 413 F.3d 1131, 1135 (10th Cir. 2005)(recognizing other circuit cases that allow gender-stereotyping claims under Title VII).

> If [the school] is stating that failing to promulgate the required policies and procedures for addressing sexual harassment in schools is not in and of itself discrimination, Plaintiff agrees. However, the Defendants also move to have the allegations related to the failure to promulgate policies and procedures for sexual harassment stricken as irrelevant. This is absurd. What is and what is not relevant is a matter of admissibility, not pleading.

Rule 12(f) states that "the court may strike from a pleading any . . . redundant, immaterial, impertinent, or scandalous matter."

> Motions under Rule 12(f) are generally disfavored, although they may be granted if they remove unnecessary clutter from the case and serve to expedite, not delay. *See Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir.1989). Courts generally do not grant motions to strike unless the defect in the pleading causes some prejudice to the party bringing the motion. See *Affiliated Capital Corp. v. Buck*, No. 94 C 1497, 1994 WL 691189, at *4 (N.D.Ill.Dec.2, 1994).

Rivertree Landing LLC v. Murphy, 246 F.R.D. 667 (N.D. Ill. 2007).

"'Immaterial matter is defined as that which has no relationship to the cause of action pled.'" Burke v. Chicago School Reform Bd. of Trustees, 169 F.Supp.2d 843, 846 (N.D.Ill. 2001)(quoted cite omitted). "'Prejudice results when the matter complained of has the effect of confusing the issue or where it is so lengthy and complex that it places an undue burden on the responding party.'" Id., *quoting* 5 Wright & Miller, *Federal Practice and Procedure*, § 1382.

The Court agrees with the school's reading of <u>Gebser</u>, which Plaintiffs appear to concede. <u>Gebser</u> specifically addressed the claim that the school had "fail[ed] to promulgate and publicize an effective policy and grievance procedure for sexual harassment" as required by Department of Education regulations. 524 U.S. at 292. The <u>Gebser</u> Court held that the "failure to comply with the regulations, however, does not establish the requisite actual notice and deliberate indifference. And . . . .does not itself constitute 'discrimination' under Title IX." 524 U.S. at 292.

Paragraphs 16-17, 20-21, 23 and 86-87, do, in the Court's view, imply that the Title IX claim is based in part on the school's failure to follow the federal regulations.[4] Although the Court cannot conclude at this stage that these paragraphs are completely immaterial, the Court does believe they are confusing and prejudicial since Count I cannot be based on the regulations under <u>Gebser</u>. Accordingly, the Court will recommend these paragraphs be stricken. This does not mean the information in the allegations is non-discoverable, irrelevant or inadmissible for any purpose.

---

[4]Paragraph 88 of the Complaint does not appear based primarily on a violation of federal regulations; it appears instead to be generalized allegations of the injuries John suffered.

Those determinations are better made during discovery, summary judgment or trial.

WHEREFORE, the Court makes the following recommendations:

1) The Court recommends that the motion to dismiss by the school and school district (d/e 44) be granted only to the extent it seeks to strike paragraphs 16-17, 20-21, 23, 86-87 from the Complaint.  The Court otherwise recommends that the motion (d/e 44) be denied.

2)  The Court recommends that the motion for a more definite statement by the "Charlie" defendants be denied (d/e 27).

3)  The Court recommends that the motions to strike or dismiss Count VI by the "Dog" and "Baker" defendants be denied (d/e's 12, 31).

4) The Court recommends that the requests to strike the attorney's fees sought in Counts IV and V of the Complaint be granted.  Accordingly, the Court recommends that motions 11 and 32 by the "Baker" and "Dog" defendants be granted in full, because that is the only request sought in those motions (d/e's 11, 32).  The Court recommends that the motions by the "Charlie" and "Easy" defendants by granted in part and denied in part (d/e 19, 28): granted to the extent they seek dismissal of attorney's fees in Counts IV and V and denied as to Count VI.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER:   March 5, 2008

_____s/ Byron G. Cudmore_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE